OPINION OF THE COURT
Lee Cross, J.
Defendant represents himself. He has moved, pro se, to dismiss the accusatory instrument pursuant to CPL 30.30 and *186 30.20 on the grounds that he has been denied his constitutional and statutory rights to a speedy trial. That motion is denied.
On December 9, 1990, defendant was arrested and charged by the police with criminal mischief and possession of burglar’s tools. He was given a desk appearance ticket (DAT), returnable on January 14, 1991. On January 3, defendant was arrested on a parole violation warrant and he has remained continuously incarcerated since that date. A bench warrant was issued for him when he did not appear in response to the desk appearance ticket on January 14. At some point after his arrest on the parole violation warrant, the defendant sent Charles Hynes, the District Attorney, an undated letter detailing the above facts, giving his whereabouts and requesting the docket number for "farther proceeding action [sic] to PRODUCE defendant” in court. Not having heard from the District Attorney, on March 14, the defendant took it upon himself to draft and send to the clerk of this court and to the District Attorney his own motion, affidavit and order to produce himself returnable on March 25. Perhaps for want of a docket number or because of the press of other business, this order to produce was not signed by a Judge.
When the defendant was not produced on March 25, he proceeded to draft a second motion, affidavit and order to produce himself, returnable on April 17. This motion, affidavit and order included the right docket number, which the defendant had apparently obtained from an updated copy of his criminal record which showed the bench warrant. These papers were again served on the court and on the District Attorney, although the court’s copy was returned to the defendant for insufficient postage. Again, the defendant was not produced in court. Undaunted, the defendant tried again in a third motion, affidavit and order to produce himself on May 6. This time he sent the copy to the District Attorney by certified mail, return receipt requested. The defendant was produced in court on May 6, the bench warrant was quashed, he was arraigned on the charges and he served and filed the instant motion, setting forth the above facts with copies of all of the relevant documents.
The defendant relies primarily on the case of People v Felder (132 Misc 2d 79 [Crim Ct, NY County 1986]), which, in turn, relies heavily on People v Anderson (127 Misc 2d 808 [Crim Ct, NY County 1985]). These cases hold that when a defendant is in custody at or after the time that a bench *187 warrant is issued for his failure to appear in response to a desk appearance ticket, the time he is in custody is chargeable to the People because they have an obligation to effectuate his appearance in court. In opposing the motion, the People do not contest any of the facts set forth above. Rather, they contend that, even on these facts, the defendant’s motion should be denied on the authority of People v Cooper (142 Misc 2d 820 [Crim Ct, NY County 1989]), which held that, on a desk appearance ticket, time could not be charged to the People until the defendant personally appeared in court, even though he was incarcerated on the date the bench warrant was issued and for some seven months thereafter before being produced in court. The People overlooked the case of People v Parris (148 Misc 2d 347 [App Term, 1st Dept 1990]), which holds that delays engendered by the People’s lack of diligence in locating and producing an incarcerated defendant for arraignment are not relevant in the calculation of statutory speedy trial time when a defendant has failed to appear for arraignment on a desk appearance ticket. The Parris decision by the Appellate Term means that the Felder and Anderson decisions can no longer be relied on. On March 25, 1991, Judge Bellacosa granted leave to appeal to the Court of Appeals in Parris (77 NY2d 910) so there should be a definitive ruling on this issue by that court in the months ahead.
Parris (148 Misc 2d 347, supra) seems rightly decided as far as it goes. Thousands of DATs are issued every month and approximately one half of them result in bench warrants. While ideally every warrant should be checked against the Corrections computer and all incarcerated defendants should be immediately located, the reality is far from that precise. Defendants use many aliases. Sometimes they end up with two or more NYSID numbers. The Corrections computer is not always accurate. Often a defendant who is incarcerated is released before an order to produce can be effectuated. If a Judge then stays a bench warrant to try to get a defendant in voluntarily (since he could not have been notified of the new date), and he is rearrested in the meantime, there will be no bench warrant to trigger his arraignment on the DAT when he is rearrested. Even if a bench warrant is issued, there is some lag time before it makes its way onto the defendant’s NYSID sheet, so that if he is arrested shortly after the bench warrant is issued, it will not fall on him at his arraignment on the new charges. And, when a defendant is arrested on a parole violation warrant, his fingerprints are not immediately *188 taken to check for outstanding arrests or bench warrants. The due diligence requirement of CPL 30.30 (4) (c) benefits career criminals since they are often in and out of jail for various periods of time. If the People are presumed, by a due diligence requirement, to know of a defendant’s presence in the correctional system, whenever he is incarcerated under whatever alias he has used, it is in a defendant’s best interest to sit by silently during his incarceration, at least until 90 days has expired. An attorney is encouraged not to tell the court when he learns of a client’s incarceration, but, rather, to let a bench warrant be issued so that time will be charged to the People. A due diligence requirement benefits the hardened criminal much more than the neophyte.
While the People ideally should check with Corrections to see if a defendant, for whom a bench warrant has been issued, is incarcerated, an incarcerated defendant should also have some burden to make his whereabouts known. After all, he was told of the date he is due back in court and he knows that he will be unable voluntarily to appear. He should not be able to lay back quietly and reap the benefits of an overburdened system. Since the Legislature did not see fit to require due diligence in CPL 30.30 (5) (b), such a requirement should not be engrafted onto the section by a court.
The facts of this case, however, are different. In this case, the defendant filed formal legal papers seeking his own production. He has done for himself absolutely everything which an attorney appearing on his behalf could have done. Is this enough to constitute an appearance by the defendant in local criminal court in response to the ticket for purposes of CPL 30.30 (5) (b)?
The word "appearance” has varied meanings in civil and criminal practice. It can be used both to refer to a defendant’s presence in court and to an attorney’s presence in court representing a defendant. The word "appearance” is also used to refer to a constructive presence as well as to the actual physical presence of the attorney or the defendant. For example, when a defendant is given a desk appearance ticket, he may "appear” by counsel instead of appearing in person. (CPL 170.10 [1] [b].) Section 200.5 of the Uniform Rules for Trial Courts requires attorneys to file a notice of "appearance” which may or may not coincide with the attorney’s physical appearance in court (22 NYCRR 200.5). In civil practice, both defendants and attorneys routinely "appear” by filing or serving papers on opposing counsel or the court.
*189 Prior to 1982, a criminal action was deemed to have commenced on the date a DAT was returnable in court. CPL 30.30 (5) (b) was amended in 1982 to provide that a criminal action on a DAT does not commence until the defendant first appears in court. The rationale for the amendment was that it is "unreasonable to require the prosecutor to prepare [for trial] and answer 'ready’ when the defendant has not complied with process.” (Bellacosa, 1982 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A [1991 Supp Pamph], CPL 30.30, at 62.) The Cooper case (142 Misc 2d 820, supra) relied on this rationale in holding that a due diligence standard should not be read into CPL 30.30 (5) (b). In this case, however, the defendant has done all that he could do to comply with the process. As such the rationale does not apply here.
I conclude that the defendant in this case first appeared in local criminal court when he served a formal written motion, affidavit and order to produce on both the court and the District Attorney, specifying where he was and seeking his production in court for formal arraignment on these charges. By serving and filing these papers, he did absolutely everything which he could possibly do to get himself prosecuted. Therefore, the People will be charged with the time from March 14, when these papers were served, until May 6, the date that the instant motion was filed. Fifty-three days will thus be charged to the People so far. That is fewer than the 90 days which the People have to become ready for trial under CPL 30.30 (1) (b). Therefore the defendant’s motion to dismiss for denial of his statutory right to a speedy trial is denied.
Defendant also moves to dismiss for denial of his constitutional right to a speedy trial. In People v Taranovich (37 NY2d 442 [1975]), the Court of Appeals set forth five factors to be considered when deciding a constitutional speedy trial motion. They are the extent of the delay, the reason for the delay, the nature of the underlying charge, the defendant’s bail status and whether there is any indication that the defense has been impaired by the delay. I conclude that somewhat over three months of prearraignment delay, some of which is understandable and some of which is not excusable is too short a period of time to warrant dismissal on constitutional speedy trial grounds, particularly since the defendant has not alleged any impairment of his defense.