OPINION OF THE COURT
Laura Safer Espinoza, J.
The defendant is charged with leaving the scene of an incident without reporting (Vehicle and Traffic Law § 600 [2] [a]), a "B” misdemeanor. He moves for dismissal of the accusatory instrument on several grounds, including CPL 30.30 and 150.50, based on the People’s failure to file an accusatory instrument on the return date of a desk appearance ticket (hereinafter DAT).
The defendant was issued a DAT on March 1, 1995. He appeared with retained counsel on the return date, May 23rd, and again on July 5th and August 24th. On each of these dates "the Police Desk” in Bronx Criminal Court gave him a new date to appear because no accusatory instrument had been filed.[1] Subsequently, counsel contacted the District Attorney’s Office requesting that the matter be marked "non-processed.” *690 The case was calendared on September 7th, an information was filed and the defendant was arraigned. The People answered ready and the case was adjourned on consent to September 19th. The defendant filed the instant motion on September 8th.
1. FACIAL INSUFFICIENCY
Initially, this court rejects the defendant’s contention that "if an accusatory instrument is not filed, the Desk Appearance Ticket is not sufficient on its face pursuant to CPL 100.40” since that statute applies only to informations. Nothing in the Criminal Procedure Law mandates the "dismissal” of a DAT, since it is not an accusatory instrument. (See, CPL 1.20 [1].) As this court stated previously in People v Henrique (NYLJ, July 7, 1994, at 29, col 4 [Crim Ct, NY County]), there appears to be nothing to dismiss prior to the filing of an accusatory instrument. (See also, People v Fysekis, 164 Misc 2d 627 [Crim Ct, Bronx County 1995]); People v D’Alessio, 134 Misc 2d 1005, 1009 [Crim Ct, Richmond County 1986].)
2. CPL 150.50
A DAT is no more than a notice to appear in court on a specific date regarding the alleged commission of a designated offense. (CPL 1.20 [26]; 150.10.) It is one of two statutory methods by which a defendant’s appearance can be compelled prior to the commencement of a criminal action. (CPL 110.10 [2].) Although CPL 150.50 explicitly requires the People to file an accusatory instrument on or before the return date of a DAT, the statute is silent as to the effect of late filing. This court agrees with the courts in People v Consolidated Edison Co. (161 Misc 2d 907 [Crim Ct, NY County 1994] [hereinafter Con Ed III]) and People v Consolidated Edison Co. (159 Misc 2d 354 [Crim Ct, Queens County 1993] [hereinafter Con Ed II]) as to their finding that a DAT becomes a nullity when the People do not comply with CPL 150.50. (See also, People v Rodriguez, 90 Misc 2d 356 [Vil Ct, Rockville Centre 1977] [defendant who appears before court on DAT when no accusatory instrument filed and no officer present to charge him must be released and any bail posted returned to him].) In this court’s opinion, however, this finding only means that subsequent appearances cannot be compelled by means of the nullified DAT. Furthermore, until an accusatory instrument is filed, a court cannot issue a summons or warrant of arrest to compel a defendant’s appearance. (CPL 150.60, 110.10 [1]; 130.30, 120.20; People v *691 Fysekis, supra; People v Henrique, supra; People v Byfield, 131 Misc 2d 884 [Crim Ct, NY County 1986].)
Despite the nullification of the DAT, however, there is nothing to prevent a defendant from appearing voluntarily on a future date or waiting until a proper accusatory instrument is filed and an arrest warrant or summons is issued.[2] The means utilized to secure a defendant’s appearance are irrelevant. Unlike in courts with jurisdiction over civil matters, criminal courts acquire personal jurisdiction once a defendant appears, regardless of how that presence is secured. (People v Dillin, 148 Misc 2d 311, 314-315 [Crim Ct, NY County 1990]; People v Gross, 148 Misc 2d 232, 239 [Crim Ct, NY County 1990]; People v MacFarlene Co., 130 Misc 2d 70, 71 [Crim Ct, NY County 1985]; see also, People v DiLorenzo, 149 Misc 2d 791, 795 [Crim Ct, Bronx County 1990] ["(O)nce the defendant appears, even if in response to an improperly served or defective ticket, the Criminal Court acquires jurisdiction over his person”].) Thus, once the court acquires personal jurisdiction over the defendant by alternative means, the nullification of the DAT has no practical effect since its purpose never went beyond compelling his or her presence on the original return date.
Under this reasoning there is no basis for dismissing an accusatory instrument simply because of a nullified DAT. (Cf., Con Ed II, supra, and Con Ed III, supra [dismissing accusatory instruments filed after DAT return date pursuant to CPL 150.50].) There is nothing in CPL 150.50 to authorize such a dismissal. Nor is a failure to conform with CPL 150.50 one of the grounds enumerated in CPL 170.30 on which dismissal is authorized by statute. This court therefore finds, as it did in People v Henrique (supra), that dismissal for an untimely filing of an accusatory instrument is not an available remedy under CPL 150.50. (Accord, People v Kwan Han, 166 Misc 2d 246 [Crim Ct, Bronx County]; People v Fysekis, supra; People v Consolidated Edison Co., NYLJ, July 15, 1994, at 27, col 4 [Crim Ct, NY, County] [hereinafter Con Ed IV]; People v Consolidated Edison Co., 153 Misc 2d 595 [Crim Ct, NY County
*692 1992] [hereinafter Con Ed I].[3] Accordingly, the defendant’s motion to dismiss pursuant to CPL 150.50 is hereby denied.
3. CPL 30.30
The People have 60 days to announce their readiness on a "B” misdemeanor. (CPL 30.30 [1] [c].) It is the defendant’s position that pursuant to CPL 30.30 (5) (b) the action commenced when he came to the courthouse on May 23rd, the return date for the DAT. Under the People’s interpretation of that statute, however, the speedy trial time only began to run on September 7th when the defendant first appeared before a Judge and the accusatory instrument was filed.
CPL 30.30 (5) (b) compels the computation of speedy trial time from the date the defendant "first appears in a local criminal court in response to the [desk appearance] ticket.” (People v Parris, 79 NY2d 69 [1992].) While this statutory language appears unambiguous, it requires interpretation in light of widespread procedures utilized for undocketed DATs whereby defendants are afforded no opportunity to appear before the Judge presiding in the DAT courtroom.[4] Instead, these defendants are seen in another area of the courthouse by nonjudicial personnel, usually court officers or Police Department employees, and given new dates to appear. These *693 "adjournments” continue until an accusatory instrument is filed and the case docketed, at which point a defendant appears before a Judge for the first time. (While this system of handling the large number of undocketed DATs may be expeditious, it is unclear under what authority these nonjudicial personnel act. Clearly they have no statutory authority to adjourn proceedings or to compel a defendant’s appearance in court.)[5] It is highly improbable that, in revising CPL 30.30 (5) (b), the Legislature contemplated that multitudes of defendants would be prevented by such questionable administrative procedures from appearing before a Judge on the DAT return date.
Two issues must be addressed in order to determine when the action at bar commenced. The first is whether CPL 30.30 (5) (b) is an exception to the general statutory scheme that an accusatory instrument must be filed before any criminal action commences. The second is whether a defendant’s "constructive” appearance in the courthouse in an attempt to respond to an undocketed DAT is sufficient to trigger CPL 30.30 (5) (b). This court holds in the affirmative as to both questions, despite the fact that this position seems at odds with the over-all structure of the Criminal Procedure Law.
It is axiomatic that "[a]n action must commence before any speedy trial provisions become applicable”. (People v Paige, 124 Misc 2d 118, 119 [Crim Ct, Bronx County 1984]; CPL 30.20 [1].) A strong argument can be made that no action can commence prior to the filing of an accusatory instrument. By statutory definition, a criminal action commences when an accusatory instrument is filed in a criminal court. (CPL 1.20 [16], [17].) It is the filing of the accusatory instrument that gives the court subject matter jurisdiction. (People v Coore, 149 Misc 2d 864 [Yonkers City Ct 1991]; People v Gross, 148 Misc 2d, supra, at 240-241; People v Byfield, 131 Misc 2d, supra, at 885.) Since a DAT is not an accusatory instrument, "its issuance does not obviate the need for the filing of an accusatory instrument.” (People v Fysekis, supra, at 629; see, Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 150.50, at 692 ["(P)rior to the filing of (an accusatory instrument) the court has no jurisdiction to take any action with respect to the *694 charge or the individual upon whom the ticket was served”]; Preiser, Practice Commentaries, op. cit., CPL 150.10, at 678 ["An appearance ticket * * * does not commence a criminal action. The only document that can * * * is an accusatory instrument and an appearance ticket is not an accusatory instrument”].) It therefore appears contradictory to deem the commencement of a "criminal action” on an undocketed DAT to occur in the preaccusatory stage for speedy trial purposes when, by statutory definition and commonly accepted procedural concepts, there is not yet a "criminal action”.
There is, however, an interpretation of CPL 30.30 (5) (b) which, in the opinion of this court, more conforms with the over-all statutory scheme: the People must file an accusatory instrument which confers at least preliminary jurisdiction before any action commences, for speedy trial or any other purposes; CPL 30.30 (5) (b) merely relieves the People of their duty to file an instrument which confers trial jurisdiction until the defendant appears in response to a DAT. As stated in the Practice Commentary to CPL 30.30, subdivision (5) (b) was added "to relieve the People of the onus of the time period between commencement of the action and the defendant’s first appearance in court in cases where an appearance ticket is issued.” (Preiser, Practice Commentaries, op. cit., CPL 30.30, at 171.)[6] Preiser concludes, therefore, that "[t]his made clear in appearance ticket cases at least that the time for filing an information or indictment would not start to run simply because a complaint had been filed.” Under such an interpretation, this subdivision is essentially a special tolling provision, unique to actions involving DATs, which serves to "exclude” time between the filing of the instrument and the defendant’s appearance by delaying the start of the speedy trial clock.[7] Such a construction is in keeping with both the legislative intent and the over-all statutory scheme. (See, People v DiLorenzo, supra [CPL 30.30 (5) (b) is a tolling provision which normally serves *695 to relieve People’s obligation to prepare case for trial where defendant fails to appear on DAT, but is inapplicable when defendant not properly served with DAT, charging time between filing of accusatory instrument on or before return date and defendant’s appearance].) This court can find nothing in the legislative history to support the contrary interpretation that subdivision (5) (b) is an exception to the over-all statutory scheme of requiring an accusatory instrument before a criminal action can be deemed to have commenced.
Nonetheless, most courts of concurrent jurisdiction which have addressed the issue have interpreted CPL 30.30 (5) (b) to be such an exception. As expressed in People v D’Alessio (134 Misc 2d, supra, at 1008):
"notwithstanding the seemingly overwhelming support of the view that mere issuance of a DAT, without more, cannot constitute commencement of a criminal action (McClellan v New York City Tr. Auth., 111 Misc 2d 735, 738 [1981], supra) that view is questionable in light of CPL 30.30 (5) (b) * * * which clearly states that, for purposes of speedy trial, in an action where defendant has been served with an appearance ticket, that criminal action must be deemed to have commenced on the date the defendant first appears in response to the ticket. Thus, it appears that a limited exception was created to the general rule that the filing of an accusatory instrument is necessary to commence a criminal action.
"If this court adheres strictly to the concept that 30.30 time does not begin to run until the actual filing of an accusatory instrument, the court would, in effect, be stating that CPL 150.50 is a toothless statute. One must assume, therefore, that the Legislature, in its infinite wisdom, had a reason for not only writing that statute, but also for not amending or totally repealing same when section 30.30 (5) (b) was amended in 1982.”
Similarly, in People v Vescur (134 Misc 2d 574, 577 [Crim Ct, NY County 1993]), the court also reasoned that CPL 30.30 (5) (b) created a specific exception to the general rule that criminal actions commence with the filing of an accusatory instrument. Based on the defendant’s claim that he appeared before a Judge on the DAT return date, the court found it "consistent with the purposes of the speedy trial rule” that the action commenced and the clock began to run at that time, even though no accusatory instrument had been filed. (Accord, Con Ed IV, NYLJ, July 15, 1994, at 27, col 4, supra.) This court, however, shares the concern expressed in Con Ed II that these holdings *696 "created a legal fiction whereby a case will be deemed to have been commenced prior to the time the court obtains subject matter jurisdiction over the case.” (159 Misc 2d, at 357, supra.)
While there appears to be no appellate authority which directly discusses these concerns, a ruling by the Fourth Department appears dispositive. In People v Velie (193 AD2d 1107 [4th Dept 1993]), the defendant had appeared in court with retained counsel. Although no accusatory instrument had been filed, counsel placed his appearance on the record. No further action was taken on the one charge cited on the DAT until almost a year later when the People filed an indictment against the defendant containing that charge and adding two additional ones. The lower court dismissed the indictment. The Fourth Department reversed only as to the new counts in the indictment, holding that the speedy trial clock began to run as to them at the time the indictment was filed. As to the charge which was on the DAT, however, the appellate court upheld the dismissal, finding that the action commenced on the date the defendant appeared in response to the DAT. Since no accusatory instrument had yet been filed when the defendant appeared, this holding implicitly accepts that under these circumstances the speedy trial clock commenced before the filing of an accusatory instrument.[8] Thus, while this court is troubled by what it views to be a contradiction of the statutory scheme to hold that criminal actions involving the issuance of a DAT can, unlike any other criminal action, commence prior to the issuance of an accusatory instrument, it is compelled to find so given that the Fourth Department clearly acted on the premise that this was the proper interpretation of CPL 30.30 (5) (b).
The second prong of our inquiry is the proper interpretation of CPL 30.30 (5) (b) as to the words "first appears in a local Criminal Court”. Several courts have interpreted this phrase to include when a defendant first arrives in response to the DAT at the appropriate place within the courthouse for undocketed DATs pursuant to the instructions of courthouse personnel. (People v Kwan Han, 166 Misc 2d 246, supra [Crim Ct, NY County] [defendant who appears in courthouse and follows written instructions posted outside courtroom and oral instructions from court personnel has satisfied appearance requirement and commenced action for speedy trial purposes]; *697 People v Con Ed I, 153 Misc 2d 595, 598-599, supra [CPL 30.30 (5) (b) applicable when corporate defendant’s counsel found case uncalendared in courtroom on DAT return date and was notified by mail of rescheduled date]; People v Lewin, NYLJ, Aug. 9, 1990, at 20, col 3 [Crim Ct, NY County] [despite no official record to support defendant’s contention he "appeared” on original return date, where DAT attached to court papers showed original return date crossed off and new date written in, presumably by Police Department official or court clerk in accordance with existing practice and notice of appearance dated as of original return date, court held action commenced for speedy trial purposes on date defendant first came in response to DAT]; People v Steinberger, NYLJ, Feb. 15, 1990, at 28, col 6 [Crim Ct, Kings County] [reporting to "sign-in room” of Criminal Justice Agency of the Police Department in the criminal court fulfills obligation to appear and commences speedy trial time];[9] see also, People v Flores, 151 Misc 2d 185 [defendant incarcerated on another matter who filed formal motions to be produced to respond to DAT deemed to have constructively appeared for speedy trial purposes, although not produced in court].) These cases provide an equitable solution to the problematic procedures presently employed to handle the large volume of undocketed DATs for they do not allow the People to circumvent the trial readiness rule and gain an undue advantage due solely to their own laxity in filing an accusatory instrument.
This court, however, notes that the scenario presented in the case at bar and in Kwan Han (supra) raises further contradictions with traditional criminal procedure. Specifically, it is difficult to accept that a defendant’s appearance in the courthouse, even if it were to satisfy the literal language of CPL 30.30 (5) *698 Ob), can be deemed to confer personal jurisdiction over a defendant who has not yet come before a Judge. Thus, whereas under the facts in D’Alessio and Vescur (supra), the court arguably lacked only subject matter jurisdiction, under Kwan Han (supra), the criminal action is deemed to have commenced before the court has acquired either subject matter or personal jurisdiction.
In the opinion of this court, the anomalies which result from applying CPL 30.30 (5) (b) to the situation at bar arise because there are no explicit provisions in CPL 30.30 for the redress of preaccusatory delays. Since "[t]he State due process requirement of a prompt prosecution is broader than the right to a speedy trial guaranteed by statute (see CPL 30.20; see, also, CPL 30.30) and the Sixth Amendment” (People v Singer, 44 NY2d 241, 253 [1978]), due process protection traditionally has been the remedy for undue delay between arrest and the filing of an accusatory instrument (People v Staley, 41 NY2d 789 [1977]). As noted above, however, the anomalies involved in the unique application of CPL 30.30 to the preaccusatory stage apparently presented no impediment to the appellate court in Velie (supra) in its analysis. This court is therefore willing to apply CPL 30.30 (5) (b) to the instant matter and hold that speedy trial rights commence at the point of a defendant’s constructive appearance in response to a DAT when no accusatory instrument has been filed. To do otherwise would effectively bar the defendant who has done all that he can do to appear before a Judge on the DAT return date from receiving the speedy trial protection afforded the defendant in Velie who, under a different administrative practice, was allowed into the courtroom prior to the filing of the accusatory instrument. To deny the defendant at bar such protection would be particularly egregious given that he returned over the course of many months, only to be given still another date to appear.
Accordingly, the criminal action in the instant case commenced on March 23, 1995, when the defendant first appeared in the courthouse and, following the instructions set down by court personnel, went to the Police Desk and received a new date to appear. Since the People’s filing of an accusatory instrument on September 7th and statement of readiness occurred well beyond the speedy trial limit, the defendant’s motion to dismiss pursuant to CPL 30.30 is hereby granted.
The court takes this opportunity to urge a reexamination of the issues presented herein. It is unconscionable that so many *699 individuals are kept in an uncertain state over such long periods of time as to the status of any prosecution against them. Despite time-consuming efforts to comply with what they perceive to be the mandates of the criminal justice system, they are swept up in what has become an unwieldy bureaucratic response to a law enforcement overload. The long line of people waiting to receive new dates to reappear on DATs has become a morning fixture in our courts. Renewed attention by court administrators and the District Attorney’s Office is needed to insure that these cases are promptly reviewed for either docketing or nonprosecution so that compliance with CPL 150.50 becomes the norm rather than the exception. Additionally, legislators may wish to consider enacting a sanction for the failure to comply with the mandate of this statute, which presently carries no penalty.

. The People neither refute nor concede that the defendant appeared with counsel at the designated place for DATs on these three occasions, noting only that he submitted no documentation to support this contention. Nor have the People — who presumably have access to the records of the Police Desk — submitted any documentation in response to defendant’s claim. The court, therefore, accepts defense counsel’s affirmation as to these facts since they are based on his personal knowledge.

. Preiser notes "that the service of an appearance ticket does not foreclose the [arresting] officer from making a warrantless arrest for the offense upon which the ticket was based, if the person has failed to appear on the return date.” (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 150.10, at 679.)

. This court rejects, however, the legal fiction employed in Con Ed I (supra) (and relied upon by the People in the case at bar) that "rescheduling” undocketed DATs for defendants who appear at the courthouse merely corrects a "defective” date on the DAT, in effect creating a new "return date” by which time the People have to comply with CPL 150.50.

. The procedures for undocketed DATs appear to vary at different times and in different courthouses. For example, this court has observed on at least one occasion at the end of the court day a ragged list posted at the street entrance to the Bronx Criminal Courthouse instructing designated defendants to return on another date. Under the more common procedure in Bronx County written instructions posted on the door of the DAT courtroom instruct defendants not listed to go to a DAT office where a police administrative aide orally instructs them to return on another date. (See, People v Kwan Han, supra [it is disturbing that the written instructions are in English only].) In New York County, as this court previously described the procedure then in use, all defendants appearing on the return date must first speak to a court officer stationed outside of the courtroom in which DAT cases are heard. The People provide the officer with a list of the status of each case. Only if an accusatory instrument is ready is the defendant sent into the courtroom. Otherwise, the officer instructs the defendant to return on a new date. The officer also informs defendants when the People have decided not to prosecute and gives them an explanatory memorandum from the District Attorney’s Office, which also tells them that if their case is reinstated they will be notified by mail (presumably by the District Attorney’s Office) within three weeks to appear on a future date.

. In contrast, even though a Judge has no subject matter jurisdiction until an accusatory instrument is filed, the court does have "preliminary jurisdiction” (CPL 1.20 [25]) over a "criminal proceeding” (CPL 1.20 [18]), and there is no apparent statutory bar that prevents a Judge from setting a new date for further proceedings when DATs are undocketed.

. Prior to the revision of this subdivision in 1982, commencement of the action began on the return date but this allowed the clock to run against the People in the absence of the defendant. (See, discussion in People v DiLorenzo, supra, at 794.)

. In contrast, CPL 30.30 (4) (c) also relieves the People of their speedy trial obligation when a defendant fails to appear but does so by tolling the time after the speedy trial clock begins to run. Moreover, in order to avail themselves of this tolling, the People must determine either that the defendant is avoiding prosecution or show due diligence to secure his attendance, obligations not required under CPL 30.30 (5) (b) which applies regardless of the defendant’s reason for not appearing. (People v Parris, 79 NY2d, supra, at 71.)

. While the underlying facts are not all recited in the memorandum decision of the Fourth Department, they can be found in the record filed on appeal, which includes the lower court’s unpublished decision as well as the briefs of the parties and copies of the DAT and indictment.

. While the People rely on People v Paige (124 Misc 2d 118,121 [Crim Ct, Bronx County 1984]), that case is factually distinguishable. The People in that case had prepared the accusatory instrument and the case had been docketed on the return date. The defendant, however, appeared at the courtroom erroneously designated on the DAT and followed a court officer’s instruction to leave and await notification, presumably by mail, to return because the case was not calendared. The court held that "his mere presence somewhere in the Criminal Court building on the return date” was not enough, reasoning that the defendant must make more than a "token effort” to ensure that he is in the right courtroom at the right time. (Accord, People v Barbara, 152 Misc 2d 104 [Crim Ct, Queens County 1991] [mere appearance in court on unrelated matter insufficient to be deemed constructive appearance on DAT].) Unlike in Paige and Barbara, however, the defendant here did all that he could do to submit to the jurisdiction of the court and commence this action.